IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

RANDY GROW                                                         PLAINTIFF


        v.                        CASE NO.        2:11-CV-2012


MICHAEL J. ASTRUE, Commissioner
of Social Security Administration                                  DEFENDANT

### MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).


I.      **Procedural Background:**

The plaintiff filed her applications for DIB and SSI on September 12, 2007, alleging an onset date of August 2, 2007, due to plaintiff's blood clots, knee injury, arthritis both knees and urine changing color (T. 150). Plaintiff's applications were denied initially and on reconsideration. Plaintiff then requested an administrative hearing, which was held on September 11, 2008. Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 51 years of age and possessed a . The Plaintiff had past relevant work ("PRW") experience as a truck driver  (T. 151).

-1-

On January 21, 2009, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's obesity, status post coronary artery bypass grafting, and deep vein thrombosis did not meet or equal any Appendix 1 listing.  T. 54.  The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform a full range of light work. T. 55.  Without the assistance of a vocational expert, and relying on the Medical-Vocational guidelines the ALJ then determined Plaintiff was not disabled.  T. 58.

## II.   Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id.*  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary."  *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  *Pearsall v.*

*Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

## III.   **Discussion**:

The ALJ determined that the Plaintiff had severe impairments of obesity, status post coronary artery bypass grafting, and deep vein thrombosis (T. 54). The Plaintiff contends that the ALJ erred in failing to find his diagnosis of chronic knee pain and coronary artery disease severe. (ECF No. 8, p. 10). The Plaintiff does not argue that any of his impairments rise to the level of a listed impairment.

### A.  Step Two Determination

Step two of the regulations involves a determination, based on the medical evidence, whether the claimant has an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities. See 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir.2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir.1996).

At step two of the sequential evaluation process, the claimant bears the burden of proving that he has a severe impairment. *Nguyen v. Chater*, 75 F.3d 429, 430-431 (8th Cir. 1996). An impairment or combination of impairments is not severe if there is no more than a minimal effect on the claimant's ability to work. *See, e.g., Nguyen*, 75 F.3d at 431. A slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities is not a severe impairment. SSR 96-3p, 1996 WL 374181 (1996); SSR 85-28, 1985 WL 56856 (1985).  If the claimant is not suffering a severe impairment, he is not eligible for disability insurance benefits. 20 C.F.R. § 404.1520(c).

The Plaintiff fails to meet his burden that his subjective complaint of severe chronic knee pain is severe. Plaintiff testified at the hearing that he injured his knees on the job and messed up the cartilage in the knees (Tr. 21, 55). However, he also testified that he had not received any medical treatment for his knees following arthroscopic knee surgery in 1997 (Tr. 21, 56). The record shows that Plaintiff continued to work for years with this condition until 2007 (Tr. 111).  *See Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir.2005) (holding that working after the

onset of an impairment is some evidence of an ability to work). Further, the medical record

shows that Plaintiff complained only once of experiencing knee pain in February 2008 (Tr. 373).

See Pl.'s Br. at 6, 10. Therefore, the medical record does not support Plaintiff's subjective

complaints of severe chronic keen pain.

The record shows that Plaintiff had a history of coronary atherosclerosis and was

status post-myocardial infarction in 2005 with placement of multiple percutaneous coronary

stints (Tr. 56, 345). Also, on September 27, 2006, Plaintiff underwent a coronary artery bypass

grafting, following a diagnostic cardiac catheterization that demonstrated three-vessel coronary

artery disease with reduced left ventricular function (Tr. 56, 244, 361).

The record further shows that in August 2007, Plaintiff denied chest pain, and

Christopher Hardin, M.D., Plaintiff's treating physician, noted that Plaintiff's CAD was stable

with no symptoms reported (Tr. 321). Similarly, in November 2007, Plaintiff denied

experiencing chest pain or shortness of breath (Tr. 378). In February 2008, Plaintiff reported no

problems with his CAD at that time (Tr. 37.).

In May 2008, Michael D. Green, M.D., Plaintiff's treating physician, noted that Plaintiff

denied chest pain, dyspnea, syncope, palpitations, coughing, and wheezing (Tr. 380). Plaintiff

testified at the hearing that he continued to experience intermittent chest pains, which he

controlled with over-the-counter Aspirin (Tr. 25-26, 55). Impairments that can be controlled

effectively with medication are not disabling for the purpose of determining eligibility for SSI

benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813

F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming

a denial of benefits and noting that the claimant's impairments were responsive to medication).

*Warre v. Commissioner of Social Sec. Admin.* 439 F.3d 1001, 1006 (C.A.9 (Or.),2006).

On November 20, 2008, Plaintiff underwent a stress echocardiogram via treadmill that showed that Plaintiff did not develop exercise induced symptoms consistent with ischemia (Tr. 56, 388-89). The test also showed that the "LV function was normal and estimated ejection fraction was 55%" and that exercise "produced a normal increase in overall LV performance with an ejection fraction of >70%" (Id.). Thus, the record shows that Plaintiff's CAD was not a severe impairment because it was controlled with treatment and medication. *See Wilson v. Chater*, 76 F.3d 238, 241 (8th Cir. 1996) (conditions controlled with diet and medication are not medically severe).

The ALJ correctly determined that Plaintiff failed to establish that his knee pain and CAD were severe impairments.

The step two analysis is ultimately immaterial in this case, because the ALJ proceeded to step five. The ALJ explained that in making a determination as to Plaintiff's residual functional capacity, "the undersigned must consider all of the claimant's impairments, including impairments are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e) and 416.945; SSR 96-8p)" (Tr. 9). Regulations 20 C.F.R. §§ 404.1523 and 416.923 provide that "we will consider the combined effect of all your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process." See also 42 U.S.C. § 423(d). Thus, once it is determined that an individual has a severe impairment for purposes of step two, the combined effect of all impairments are considered, regardless of

whether they are a result of impairments that are labeled either severe or nonsevere.

**B. Credibility Determination:**

The Plaintiff contends that the ALJ committed error by not properly addressing the Plaintiff's subjective complaints. (ECF No. 8, pp. 3-4).

The Plaintiff made numerous complaints of subjective pain which the ALJ noted in his opinion. T. 55-56.  An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.  *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  The ALJ is required to take into account the following factors in evaluating the credibility of a claimant's subjective complaints:  (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions.  *See id.*  The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart,* 363 F.3d 731, 738 (8th Cir.2004). However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir.2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.*

The ALJ first noted th at the Plaintiff complained that he still experienced intermittent chest pains, despite coronary artery bypass grafting (ECF No. 55). In 1996, as a result of coronary disease, it was determined that the Plaintiff would benefit from coronary artery bypass grafting to control his angina (T. 211) and the surgery was performed on September 29, 2006 (T. 215, 361) and the Plaintiff was discharged on October 4, 2006 (T. 202). When the Plaintiff saw Dr. Hardin in August 2007 for his DVT Dr. Hardin noted that his coronary artery disease was stable and he

recommended that the Plaintiff exercise, adopt a low fat diet and lose weight (T. 314). An initial ECG performed on May 17, 2007 was normal. (T. 360) and another stress echocardiograph was performed on November 20, 2008 which showed normal sinus rhythm during the ECG (T. 388) and Dr. Green noted that by "cardiology standpoint, pt is not disabled" (T. 387). *See Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain).

The ALJ also noted that the Plaintiff testified that he treated his pain with aspirin or other over the counter medication. *See Clevenger v. Social Sec. Admin*. 567 F.3d 971, 976 (C.A.8 (Ark.),2009) *citing Goodale v. Halter*, 257 F.3d 771, 774 (8th Cir.2001) (concluding that an ALJ may reasonably discredit a claimant's testimony about disabling pain when the claimant takes nothing stronger than over-the-counter medications to alleviate her symptoms).

The Plaintiff's DVT was first diagnosed in August 2007 (T. 301) but his treating physician, Dr. Hardin, determined that it was uncomplicated, prescribed Coumadin 5 mg[1] and recommended exercise, low fat diet and weight loss (T. 314). On a follow-up visit on September 26, 2007, Dr. Hardin noted that the DVT had improved dramatically on Coumadin (T. 316) and that he would check the INR monthly. It appears that the Plaintiff's dosage of Coumadin was reduced to 2.5 mg daily prior to November 30, 2007 (T. 371) but increased to 3mg on January 16, 2008 (T. 372). There is no evidence that the Coumadin was not effective for the Plaintiff. *See Harvey v. Barnhart*, 368 F.3d 1013, 1015 (8th Cir.2004) (concluding that it is reasonable for

---

[1] Coumadin (warfarin) is an anticoagulant (blood thinner). Coumadin reduces the formation of blood clots by blocking the formation of certain clotting factors. Coumadin is used to prevent heart attacks, strokes, and blood clots in veins and arteries. The initial dose of COUMADIN is usually 2 to 5 mg once daily. See www.drugs.com

an ALJ to discount a claimant's subjective complaints of disabling pain when the pain is controllable by medication). The Plaintiff was seen by Dr. Green, his cardiologist, in May 2008 who noted that the Plaintiff had a resolution of his DVT and was no longer on Coumadin (T. 380) and he noted no rashes, lesions or discolorations on the Plaintiff's lower extremities (T. 381). An ultrasound of the right lower extremity on May 20, 2008 did reveal the presence of a clot and the Plaintiff was instructed to resume taking Coumadin. (T. 383).

The Plaintiff stated on his Function Report on September 19, 2007 that he only got outside about once per week, only walked or rode in a car and did not drive, that he does not go out alone and did not go shopping. (T. 140). He further stated that he could no longer hunt or fish. (T. 141). The Plaintiff, however, failed to indicate any life function that his condition that his condition affected. (T. 142).

Dr. Hardin's social history notes on September 26, 2007,  indicates that the Plaintiff "enjoys fishing and hunting" but that he was thinking about applying for disability.[2] (T. 316). The ALJ also noted that the Plaintiff testified that he would drive his car to McDonalds to get something to eat for dinner, but he could not drive a long way. (T. 33).

The Plaintiff also stated in his FR on September 19, 2007 that he "was supposed to stay off of my feet because of my blood clot" (T. 137) and the Plaintiff testified that Dr. Harding [sic] told him that he should keep his legs elevated. (T. 31).   However, Dr. Hardin saw the Plaintiff for the fist time on August 17, 2007 and noted that his DVT was "new and uncomplicated" and prescribed Coumadin 5mg. He also recommended exercise, low cholesterol/low fat diet and that the Plaintiff loose weight (T. 314).  When Dr. Hardin saw the Plaintiff again on September 26,

---

[2] The Plaintiff had actually applied for disability on September 12, 2007. (T. 148).

2007 he noted a "dramatic improvement" on the Coumadin.  There is no indication in the

medical records that Dr. Hardin, or any physician had instructed the Plaintiff to be off of his feet

with his legs elevated.

      The court defers to the ALJ's credibility determination, especially where the testimony

appears to indicate that plaintiff gave contradictory answers. *Human v. Barnhart*,  2006 WL

2422182, 3 (D.Kan.) (D.Kan.,2006).  In this instance the ALJ correctly discounted the subjective

complaints of disabling pain.

      **C.  RFC**

      RFC is the most a person can do despite that person's limitations. 20 C.F.R. §

404.1545(a)(1).  It is defined as the individual's maximum remaining ability to do sustained

work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§

404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all

relevant evidence in the record.  *Id*.  This includes medical records, observations of treating

physicians and others, and the claimant's own descriptions of her limitations.  *Guilliams v.

Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th

Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the

assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth

Circuit has held that a "claimant's residual functional capacity is a medical question."  *Lauer v.

Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a

claimant's RFC must be supported by medical evidence that addresses the claimant's ability to

function in the workplace."  *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

      Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering

medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 citing  Lauer v. Apfel, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

The ALJ obtained a Physical Residual Functional Capacity Assessment from Dr. Jerry Thomas on October 18, 2007.  Dr. Thomas found that the Plaintiff could Occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds and that he could stand and/or walk and sit for about 6 hours in an 8 hour day and that he had no limitations on his ability to push and/or pull. (T. 325).  He also found that he had no postural limitations (T. 326), no manipulative or visual limitations (T. 327) and no communication or environmental limitations (T. 328).  On December 5, 2007 Dr. Ronald Crow reviewed and affirmed the findings of Dr. Thomas. (T. 334).

In addition the Plaintiff's treating physician Dr. Green, a cardiologist, on May 23, 2008 was of the opinion that by a "cardiology standpoint, pt is not disabled". (T. 386).  This opinion is confirmed by a Stress Echocadiography Report performed on November 20, 2008 by Dr. Green which found normal heart function. (T. 388).  It is significant that Dr. Green had also performed an EKG on the Plaintiff on May 17, 2007 which did not reveal any abnormalities. (T. 360). While it is certainly not proper for a physician to give an ultimate opinion on the disability of a Plaintiff the opinion of Dr. Green must be give significant weight.  Generally, an ALJ is obliged to give controlling weight to a treating physician's medical opinions that are supported by the record. *See Randolph v. Barnhart*, 386 F.3d 835, 839 (8th Cir.2004); 20 C.F.R. § 404.1527(d)(2).

-11-

Dr. Green is a specialist in cardiology.  Opinions of specialists on issues within their areas of

expertise are "generally" entitled to more weight than the opinions of non-specialists. See 20

C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). *Guilliams v. Barnhart*  393 F.3d 798, 803 (C.A.8

(Mo.),2005), 20 C.F.R. § 404.1527.

　　　While is not proper to consider Dr. Green's opinion that the Plaintiff is "not disabled" it

is clear that the doctor felt that the Plaintiff's cardiology condition would not have any impact on

his ability to work, and, coupled with non examining physician's reports, support the ALJ's RFC

assessment.

### C.  Step Five

　　　The Plaintiff contends that the ALJ erred at the step five evaluation of the Plaintiff's

claim when the ALJ determined that a finding of non disabled was "directed by Medical

Vocational Rule 202.14" (T. 58).

　　　At step five in the process, the ALJ must determine if the claimant can make an

adjustment to other work. See 20 C.F.R. § 404.1520(a)(4)(v). Where a claimant does not suffer

from nonexertional impairments or where such impairments "do not diminish or significantly

limit the claimant's residual functional capacity to perform the full range of Guideline-listed

activities," the Commissioner may conduct this inquiry by consulting the Medical–Vocational

Guidelines (the Grids). *Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir.2005) (quotation omitted).

Where a claimant suffers solely from one or more exertional impairments, the Secretary may

refer to the Medical-Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2

(1986), to determine whether jobs which the claimant can perform are available in the national

economy and, consequently, whether the claimant is disabled. *Tucker v. Heckler*, 776 F.2d 793,

795 (8th Cir.1985); *Haynes v. Heckler*, 716 F.2d 483, 485 (8th Cir.1983);  Lewis v. Heckler  808

F.2d 1293, 1297 (C.A.8 (Iowa),1987)

However, "where the claimant suffers from a nonexertional impairment such as pain, the

ALJ must obtain the opinion of a vocational expert instead of relying on the Medical–Vocational

Guidelines." *Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir.2006). "Testimony from a vocational

expert is substantial evidence only when the testimony is based on a correctly phrased

hypothetical question that captures the concrete consequences of a claimant's deficiencies." *Cox*

*v. Astrue*, 495 F.3d 614, 620 (8th Cir.2007). *Collins v. Astrue*  648 F.3d 869, 871 -872 (C.A.8

(Ark.),2011).

In this case the ALJ determined that the Plaintiff had a severe impairment of obesity.

Social Security Ruling ("SSR") 00-3p, which states that obesity is a "medically determinable

impairment" that can constitute a severe impairment under Listing 12.05C, and

reminds adjudicators "to consider [obesity's] effects when evaluating disability." SSR

00-3p, 65 Fed. Reg. 31,039, 2000 WL 33952015 (May 15, 2000).  The ALJ made this finding

even though the Plaintiff did not list obesity as a basis for his disability (T. 150) nor was there

any medical evidence in the file concerning the effect of Plaintiff's obesity. Regardless the ALJ

made the determination that the Plaintiff's obesity was a severe impairment along with the

Plaintiff's coronary artery bypass and his deep vein thrombosis (T. 54).

Where, as here, a claimant suffers from a non-exertional impairment, the guidelines "are

not controlling and cannot be used to direct a conclusion of disabled or non-disabled." *Haynes v.*

*Heckler*, 716 F.2d 483, 485 (8th Cir.1983). In *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th

Cir.1987), the Eighth Circuit recently stated:

-13-

Where a claimant suffers in whole or in part from a nonexertional impairment, his 'characteristics do not identically match those set forth in the guidelines and vocational expert testimony is required for the Secretary to determine whether there are jobs available that a person with claimant's particular characteristics can perform.' *Jelinek v. Heckler*, 764 F.2d 507, 511 (8th Cir.1985). Only where the ALJ shows, by vocational expert testimony or other evidence, that the nonexertional impairment does not limit the claimant's ability to perform all of the jobs contemplated by ... sedentary work ..., may the grid be applied. *See Tucker v. Heckler*, 776 F.2d 793, 796 (8th Cir.1985); *Hunt v. Heckler*, 748 F.2d 478, 481 (8th Cir.1984).  Failure to obtain the proper testimony of the VE is legal error and no matter how minuscule requires reversal.

## IV.    Conclusion:

Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

Dated  this April 20, 2012.

*/s/ J. Marschewski*
_____
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE